1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:  (323) 979-2063
5  Facsimile:   (323) 488-6748

6  Attorney for Plaintiff
   Healthcare Ally Management of California, LLC
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  Healthcare Ally Management of        Case No.: 2:22-cv-04829-MWF-RAO
    California, LLC
12                                       First Amended Complaint For:
                 Plaintiff,
13                                       1.  NEGLIGENT
        v.                                   MISREPRESENTATION; AND
14                                       2.  PROMISSORY ESTOPPEL
    Stroock & Stroock & Lavan, LLP
15  and DOES 1-10,                       Or in the alternative-

16               Defendant.              3.  RECOVERY OF BENEFITS
                                             UNDER 29 U.S.C. §1132 (a)(1)(B)
17
                                         **(Jury Trial Requested)**
18
                                         Damages - $57,800.00
19

20

21

22

23

24

25

26

27

28

                     First Amended Complaint

1    Plaintiff Healthcare Ally Management of California, LLC (hereinafter
2    referred to as "PLAINTIFF" or "HAMOC") complains and alleges:

3                                    **PARTIES**

4    1.    On June 17, 2015, La Peer Surgery Center (hereinafter referred to as
5    the "Medical Provider") entered into an agreement with HAMOC. The agreement
6    provided that Medical Provider could assign any past, present, or future unpaid or
7    underpaid bills to HAMOC by sending HAMOC a copy of the unpaid or underpaid
8    bill. The agreement also provided that once an underpaid or unpaid bill was
9    assigned to HAMOC, HAMOC had the right to take any legal action necessary
10   including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill.
11   On September 30, 2021, Medical Provider assigned Patient's[1] underpaid/unpaid bill
12   including the right to file a lawsuit to HAMOC by sending via email a copy
13   Patient's underpaid/unpaid bill to HAMOC. Patient is a member and enrollee of
14   Stroock & Stroock & Lavan, LLP (hereinafter referred to as "DEFENDANT")
15   health insurance policy.

16   2.    Plaintiff, is and at all relevant times was a company, organized and
17   existing under the laws of the State of California.  Plaintiff is and at all relevant
18   times was in good standing under the laws of the State of California.

19   3.    Medical Provider, is and at all relevant times was a medical company,
20   organized and existing under the laws of the State of California.  Medical Provider
21   is and at all relevant times was in good standing under the laws of the State of
22   California.

23   4.    Defendant is and was licensed to do business in and is and was doing
24   business in the State of California. PLAINTIFF is informed and believes that

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full names, dates of treatment and policy information pertaining to the Patients is being withheld.  This information will be disclosed to defendants upon their request.

FIRST AMENDED COMPLAINT

Defendant is licensed to transact business in the State of California.  Defendant is, in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

5.     Based on information provided by Defendant, Plaintiff understands that Aetna Life Insurance Co. ("Aetna") is and was Defendant's agent and representative in connection with stating the manner of payment for medical services and providing other administrative services relating to the Patient's and Defendant's health plan.

6.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

7.     At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patients.

- 3 -

## **GENERAL ALLEGATIONS**

8.    This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

9.    Medical Provider is informed and believes based on Aetna's oral and other representations, made on behalf of Defendant, that the Patient was an insured of DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them. Medical Provider is informed and believes that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures and surgeries by medical practitioners like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

10.    It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

11.    Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that

FIRST AMENDED COMPLAINT

the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

12.     Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

13.     The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

14.     The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers or network holders such as Defendant's representative Aetna have contracted rates for in-network providers that are so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

15.     Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

16.     The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what

FIRST AMENDED COMPLAINT

providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[2]

17.     Based upon these criteria, Medical Provider's charges are usual, customary and reasonable.  Medical Provider charged DEFENDANT the same fees that it charges all other payors.  Medical Provider's fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

18.     DEFENDANT and Aetna use the term UCR in their policies.

19.     When DEFENDANT or Aetna on Defendant's behalf uses the term UCR for the price of a medical service, DEFEDANT and/or Aetna will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[3]

20.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or Aetna and it is available for free in a more limited fashion for use by consumers.[4]

21.     When a medical provider like PLAINTIFF is told that DEFENDANT or Aetna will be paying a claim based on UCR, PLAINTIFF expects that

---

[2] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 1, 2022), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[3] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

[4] *See* fairhealthconsumer.org, (August 1, 2022), https://www.fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

DEFENDANT or Aetna will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

22.    In the alternative and separately, Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

23.    Medical Provider is informed based solely on DEFENDANT's representations that Patient's health plan at issue in this litigation is a health plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). Based on DEFENDANTS' representations, Medical Provider asserts that Patient's health plan is an ERISA health plan ("ERISA Plan").

24.    Prior to services being rendered, Medical Provider obtained an assignment from each Patient granting Medical Provider the right to step into the shoes of each Patient with respect to Patient's rights under Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for DEFENDANT's failure to properly administer the terms of the ERISA Plan.

25.    For Patient's claim, DEFENDANT has waived or is estopped from asserting an anti-assignment provision were one even to exist. *See Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 437 (9th Cir. 2020).

26.    For the claim at issue in this suit, Medical Provider has spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

27.    Medical Provider sent out multiple appeal letters to DEFENDANT and any further appeals would be futile as Medical Provider has received letters stating that DEFENDANT's decision is final.

28.     In either case, Medical Provider has a reputation for providing high quality care and, as a result, Plaintiff brings this suit to obtain appropriate compensation for Medical Provider's services.

## SPECIFIC FACTS

## PATIENT TM

29.     On July 17, 2019, Patient received a surgical procedure from Medical Provider.

30.     On July 12, 2019 so as to determine whether or not to provide services, Medical Provider's employee, Yuriko H., obtained representations from Aetna and DEFENDANT's representative, Sara, regarding the manner in which Medical Provider would be paid for services.

31.     Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

32.     Aetna on behalf of Defendant represented to Medical Provider that Patient's deductible is and was $1,000.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $4,000.00 and that to date for that calendar year Patient had paid $4,000.00.

33.     Medical Provider asked: does Defendant pay based on UCR for procedure codes 45388, 45380, 43270, 43239, and other similar codes within the same family?

34.     Aetna on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 45388, 45380, 43270, 43239, Defendant pays the UCR rate.

35.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 45388, 45380, 43270, 43239?

36.     Aetna on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 45388, 45380, 43270, 43239, Defendant's payment would not be based on the Medicare Fee Schedule.

- 8 -

37.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

38.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

39.     Aetna on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

40.     Despite having Aetna make these representations on its behalf, DEFENDANT and Aetna knew that they would not be paying Medical Provider at the UCR rate.

41.     Despite having Aetna make these representations on its behalf, DEFENDANT and Aetna knew that they would be paying Medical Provider at a Medicare rate.

42.     MEDICAL PROVIDER was never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient.[5] As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

43.     Medical Provider relied and provided services solely based on Aetna's representations, promises and statements on behalf of DEFENDANT. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide

---

[5] Defendant, after being served with this lawsuit and as a basis for removal, may have provided portions of the plan to Plaintiff.

FIRST AMENDED COMPLAINT

medical services. Medical Provider took Aetna's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

44.     In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

45.     On July 12, 2019, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

46.     Following the July 17, 2019 medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

47.     At no point in time did DEFENDANT or Aetna on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

48.     Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Aetna in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

49.     Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that DEFENDANT would only speak with the Patient.

50.     DEFENDANT has made clear that Medical Provider has no further administrative remedies.

51.     In all cases DEFENDANT refused to make any additional payment.

52.     According to Defendant's health plan, Defendant is obligated to pay the "FCR" rate. The FCR rate is defined as "an amount that we determine is enough to cover the facility provider's estimated costs for the service and leave the facility provider with a reasonable profit. For hospitals and other facilities that report costs (or cost-to-charge ratios) to CMS, the FCR rate is based on what the facilities report

FIRST AMENDED COMPLAINT

to CMS. For facilities that do not report costs (or cost-to-charge ratios) to CMS, the FCR rate is based on statewide averages of the facilities that do report to CMS. We may adjust the formula as needed to maintain the reasonableness of the recognized charge. For example, we may make an adjustment if we determine that in a particular state the charges of ambulatory surgery centers (or another class of facility) are much higher than charges of facilities that report costs (or cost-to-charge ratios) to CMS."

53.    Defendant and Aetna did not in fact pay Medical Provider an amount sufficient to leave Medical Provider with a reasonable profit.

54.    Additionally, Aetna on behalf of Defendant issued an explanation of benefits ("EOB") which stated that under Defendant's health plan the allowed amount for payment was 100% of the billed amount, $57,800.00. Since the MOOP had been met, the allowed amount should have been the same as the paid amount. However, the paid amount was only $7,091.10.

55.    Aetna on behalf of Defendant determined that $57,800.00 was the appropriate FCR rate, however Aetna on behalf of Defendant did not make a payment in accordance with this determination. Aetna on behalf of Defendant did not make payment in accordance with Defendant's health plan.

56.    Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT through Aetna any and all billing information required by DEFENDANT and Aetna, including a bill for $57,800.00.

57.    Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT through Aetna accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Aetna

FIRST AMENDED COMPLAINT

any and all billing information and any and all additional information requested by DEFENDANT.

58.     DEFENDANTS processed the bill and sent an EOB directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $7,091.10.

59.     The amount paid was well below the full billed amount as allowed on the EOB and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANT.

## FIRST CAUSE OF ACTION

## FOR NEGLIGENT MISREPRESENTATION

60.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

61.     Aetna on behalf of DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

62.     Aetna on behalf of DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

63.     Aetna on behalf of DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

64.     Medical Provider then relied on Aetna on behalf of DEFENDANT's misrepresentation and provided the services to Patient. Medical Provider has been damaged in not receiving payment at the represented UCR rate.

65.     Medical Provider was owed and now Plaintiff is owed an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## PROMISSORY ESTOPPEL

66.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

67.     Aetna on behalf of DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of reasonable and customary and or average billed charges of similarly situated medical providers within similarly situated areas or places of practice, UCR.

68.     Medical Provider only decided to provide services because they were assured that payment would be made at the UCR rate not based on Medicare.

69.     After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical services expecting that payment would be made at that rate.

70.     Medical Provider did rely on the statements, assertions and promises of Aetna on behalf of DEFENDANT and provided the medical services to the Patient.

71.     As a direct and proximate result of Aetna on behalf of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate.

72.     The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical services to Patient.  As a further direct, legal and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical services for

- 13 -

which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services.

73.     In light of the material representations and misrepresentations of Aetna on behalf DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatment at the reasonable and customary and or market rate.

74.     Medical Provider was owed and now Plaintiff is owed an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

75.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

76.     This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

77.     Medical Provider did and now Plaintiff does seek to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider and now Plaintiff have standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider and now Plaintiff are a "beneficiary" entitled to collect benefits, and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANT the party with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

FIRST AMENDED COMPLAINT

1    78.    DEFENDANT is responsible as the payor of benefits

2    79.    Aetna is responsible based on its duties as the administrator of the

3  plan.

4    80.    By reason of the foregoing, Medical Provider was and now Plaintiff is

5  entitled to recover ERISA benefits due and owing in an amount to be proven at

6  trial, and Plaintiff seeks recovery of such benefits by way of the present action.

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

FIRST AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE,** Healthcare Ally Management of California, LLC prays for judgment against defendants as follows:

1.    For compensatory damages in an amount to be determined, plus statutory interest;

2.    For restitution in an amount to be determined, plus statutory interest;

3.    For a declaration that DEFENDANTS are obligated to pay plaintiff all monies owed for services rendered to the Patient; and

4.    For such other relief as the Court deems just and appropriate
.

Dated: August 2, 2022          LAW OFFICE OF JONATHAN A.
                               STIEGLITZ

                               By: /s/ Jonathan A. Stieglitz
                                   JONATHAN A. STIEGLITZ
                                   Healthcare Ally Management of
                                   California, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff, Healthcare Ally Management of California, LLC, hereby demands a jury trial as provided by law.

Dated: August 2, 2022          LAW OFFICE OF JONATHAN A.
                               STIEGLITZ

                               By: /s/ Jonathan A. Stieglitz
                                   JONATHAN A. STIEGLITZ
                                   Attorneys for Plaintiff,
                                   Healthcare Ally Management of
                                   California, LLC

FIRST AMENDED COMPLAINT